**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES A. LEWIS, et al., | : | CIVIL CASE |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : | NO. 13-2547 |

**MEMORANDUM RE: THE CITY OF PHILADELPHIA'S
MOTION FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                                    **April 8, 2014**

**I.     Introduction**

This action involves claims under § 1983 and state law related to various police officers' arrest of Plaintiffs on September 2, 2011.  Defendant, the City of Philadelphia (the "City"), moved for summary judgment, claiming that Plaintiffs have failed to adduce sufficient evidence showing that the City should be held liable for Plaintiffs' claims.  For the following reasons, this Court GRANTS the City's Motion for Summary Judgment with respect to Plaintiffs' state law claims, and DENIES the City's Motion for Summary Judgment with respect to Plaintiffs' § 1983 claim.

**II.    Background**

Plaintiffs filed their Complaint on May 9, 2013.  ECF 1.  Plaintiffs seek compensatory and punitive damages related to the following causes of action:  civil rights violation (Count I), assault and battery (Count II), false imprisonment (Count III), malicious prosecution (Count IV), defamation (Count V), intentional infliction of emotional distress (Count VI), invasion of privacy (Count VII), civil conspiracy (Count VIII), and loss of consortium (Count IX).  Id.  The Complaint names the City of Philadelphia, Lieutenant Jonathan Josey, Officer Paul Groves,

Officer Curt McKee, Officer Timothy Coleman, and Officer Timothy Murphy as Defendants. Id.

Defendants answered Plaintiffs' Complaint on June 12, 2013.  ECF 4.

Following discovery, on January 31, 2014, the City of Philadelphia ("the City") moved for summary judgment.  ECF 16.  Plaintiffs responded to the City's motion on February 12, 2014.  ECF 17.

The parties do not dispute the majority of facts material to this Motion for Summary Judgment.  On September 2, 2011, Plaintiff James A. Lewis ("Lewis Sr.") was driving a Bentley on the 600 block of Erie Avenue in Philadelphia.  ECF 16 (The City's Mot. for Summ. J.), Statement of Undisputed Facts ("SUF") ¶ 1.  Meanwhile and nearby, Plaintiff James A. Lewis II ("Lewis II") was driving a 2011 Chevrolet Silverado ("Silverado") with passengers, Plaintiffs Marquis J. Lewis and Lyric L. Lewis.  Id. ¶ 3.  Defendant Josey stopped Lewis Sr. for a vehicle investigation.  Id. ¶ 2.  Lewis II parked the Silverado behind Josey's car.  Id. ¶ 4.  Defendant Josey approached the driver's side door of the Silverado and ordered Lewis II to move the vehicle.  Id. ¶ 5.

At that time, Lewis exited the Bentley and approached and spoke with Josey.  Id. ¶¶ 6, 8.  Josey instructed Lewis to return to his vehicle, but Lewis Sr. continued to speak to Josey.  Id. ¶¶ 9-11.  Josey also instructed Lewis II to move the Silverado from its parking spot, to which Lewis II responded that he would not leave the scene.  Id. ¶¶ 12-14.  Josey then grabbed Lewis Sr. and attempted to arrest him for disorderly conduct, striking him numerous times with his asp.[1]  Id. ¶¶ 15-16.  Lewis Sr. picked up the asp and threw it away.  Id. ¶ 17.  Lewis II then exited the Silverado.  Id. ¶ 18.  A number of other police officers then arrived on the scene, at

---

[1] Asp is a genericized trademark for a straight expandable baton.  The name derives from the best-known manufacturer of straight expandable batons, Armament Systems and Procedures.

which point Lewis Sr., Lewis II, Marquis Lewis, and Lyric Lewis were arrested and taken into custody.

Plaintiffs set forth a "Statement of Additional Facts Precluding Summary Judgment" consisting of 65 paragraphs, to which the City did not respond.[2] ECF 17 (Pls.' Opp'n to the City's Mot. for Summ. J.) at 6-17. For purposes of deciding the present Motion, the material facts set forth in this statement detail the history of complaints regarding Josey's conduct. Plaintiffs cite to Josey's Concise Officer History,[3] which states that Josey's history included 12 citizen complaints, 6 internal affairs investigations, 6 off-duty investigations, and 8 police firearm discharge investigations. ECF 17 at 15 (citing ECF 17, Ex. B (Concise Officer History report)). Plaintiffs additionally show that the City never required Josey to undergo any special training on use of excessive force based on the deposition testimony of Josey. Id. at 16 (citing Josey Dep. 25:12-21). Plaintiffs also rely on a September 30, 2012 incident involving Josey's arrest of a woman during the Puerto Rican Day parade celebration. Id. As in the present case, Plaintiffs state, Josey claimed that he was trying to arrest the woman for disorderly conduct. Id. at 17 (citing ECF 17, Ex. I (Commonwealth v. Josey, MC-51-CR-0046885-2012 (Pa. D. Feb. 12, 2013), Tr. at 89:9-14)). Although Josey was prosecuted for his conduct and terminated, he was later reinstated and remains actively employed by the City's Police Department. Id.; Josey Dep. at 14:19-15:23, 21:14-22:9.

---

[2] In its Motion for Summary Judgment, the City included a Statement of Undisputed Facts. Plaintiffs responded to this statement in its Opposition to the Motion for Summary Judgment, and included a list of additional facts, which they argued weighed in favor of denying the Motion for Summary Judgment. Because the City did not file a Reply brief in support of its Motion for Summary Judgment, the City neither admitted nor denied these facts.

[3] At Josey's deposition on January 15, 2014, Plaintiff's counsel represented that the City produced this report in discovery. ECF 17 (Pls.' Opp'n to the City's Mot. for Summ. J.), Ex. A (Deposition of Lt. Jonathan Josey, Jan. 15, 2014) at 131:21-132:1 [hereinafter Josey Dep.].

**III.     Parties' Contentions**

The City moves for summary judgment, contending that Plaintiffs have not offered any evidence regarding the customs, policies, and practices of the City and, therefore, cannot establish that the City should be held liable for Plaintiffs' alleged injuries.  The City argues that Plaintiffs have offered no evidence showing that the City made a conscious decision, or acted with deliberate indifference, in violation of Plaintiffs' constitutional rights.  The City contends that Plaintiffs have failed to show that the City was aware of a need for improved training, supervision, or discipline.  The City also argues that Plaintiffs failed to identify training that should have been offered and that would have prevented the deprivation of Plaintiffs' constitutional rights.  Moreover, the City argues that Plaintiffs have not offered evidence showing that any alleged violation of their civil rights occurred as a result of an officially adopted policy or custom.  Without such evidence, the City argues, Plaintiff cannot hold the City liable for an alleged failure to train, supervise, or discipline.

The City also moves for summary judgment on Plaintiffs' causes of action sounding in tort (Counts II-IX), arguing that the Political Subdivision Tort Claims Act ("Tort Claims Act") provides broad immunity to the City against tort claims.[4]  ECF 16 at 14-15 (citing 42 Pa. C.S.A. § 8541 et seq.).  The City contends that the Tort Claims Act provides immunity for all tort claims except in a number of limited instances, none of which apply to Plaintiffs' claims.

Plaintiffs respond by arguing that the evidence shows that City policymakers knew or should have known of systematic deficiencies in the disciplining and supervision of Philadelphia police officers because of the long history of complaints of verbal and physical abuse by police officers, particularly Defendant Josey.  Plaintiffs argue that the long history of complaints

---

[4] Plaintiffs' Complaint does not seek relief from the City for Counts X-VIII.  The Complaint does seek compensatory damages from all defendants, jointly and severally, for Count IX, loss of consortium.

4

against Defendant Josey resulted in the policymakers' constructive knowledge of constitutional violations. Moreover, Plaintiffs argue that the evidence shows that the City failed to meaningfully respond to complaints, to impose appropriate disciplinary and remedial measures, and to identify and monitor officers that have repeatedly violated the rights of individuals.

Plaintiffs offer no response to the City's Tort Claims Act argument.

## IV. Legal Standard

### A. Summary Judgment

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). In making this determination, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, the nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005)

5

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  The plaintiff cannot rely merely on the unsupported allegations of the complaint; he must present more than the "mere existence of a scintilla of evidence" in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  See Celotex, 477 U.S. at 322 (1986).

**A. Monell Liability**

A municipality cannot be held liable under the doctrine of repondeat superior for the misconduct of its police in a § 1983 claim.  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).  When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional violation implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom.  Monell v. City of New York City Dep't of Social Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Thus, a municipality may be responsible as an entity when the injury inflicted is permitted under the municipality's policy or custom, or for a failure to train.  Id. at 694; City of Canton v. Harris, 489 U.S. 378, 388, 190 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

Policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.  Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000).  Customs, on the other hand, are practices of state officials so permanent and well-settled as to virtually constitute law.  Id., at 275.  A plaintiff can demonstrate a custom exists by showing the practice is so well-settled and widespread that the policymaking officials have either actual or constructive knowledge of it.  Id. at 276.

Further, plaintiffs must demonstrate causation, as a municipality can be liable under §1983 only where its policies are "the 'moving force' behind the injury alleged."  Id. (quoting

6

Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). If the policy or custom does not facially violate federal law, causation can be established only by showing that "the municipal action was taken with 'deliberate indifference' to its known or obvious consequences." Id.

Here, Plaintiff seeks to proceed on a custom theory of municipal liability, based on inadequacy of police training, supervision, or discipline. In order to sustain a § 1983 claim for municipal liability, a plaintiff must "simply establish a municipal custom couples with causation – i.e., that, policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990). Plaintiff must show that the officials determined by the district court to be the responsible policymakers were aware of the injury, and of alternatives to prevent it, but either deliberately chose not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction in this regard. Simmons v. City of Philadelphia, 947 F.2d 1042, 1064 (3d Cir. 1991). As the Third Circuit has noted, "it is logical to assume that continued official tolerance of repeated misconduct facilitates similar unlawful actions in the future." Bielevicz, 915 F.2d at 851. Thus, "[i]f the City is shown to have tolerated known misconduct by police officers, the issue [of] whether the City's inaction contributed to the individual officers' decision to arrest the plaintiffs unlawfully in this instance is a question of fact for the juror." Id.

On a motion for summary judgment, the Court's task is to determine whether the plaintiff has presented sufficient evidence to allow a reasonable jury to draw an inference of a custom and that causation exists. See Watson v. Abington Twp., 478 F.3d 144, 157 (3d Cir. 2007) (concluding that so long as causal link is not too tenuous, jury is to determine causation; framing

question on appeal as whether plaintiff presented sufficient evidence to allow inference of custom); see also Beck v. City of Pittsburgh, 89 F.3d 966, 976 (3d Cir. 1996).

**V.     Discussion**

    **A.     Monell Claim**

In Beck v. City of Pittsburgh, the Third Circuit reversed the district court's grant of the City of Pittsburgh's motion for judgment as a matter of law. 89 F.3d 966, 971 (3d Cir. 1996). The district court found that Beck failed to present sufficient evidence to prove that the City of Pittsburgh had a policy or custom authorizing the use of excessive force by its police officers. Id. at 970. On appeal, Beck argued that the police officer in that case exhibited a pattern of violent and inappropriate behavior, with five years of complaints of excessive use of force in less than five years and that, if the City of Pittsburgh had proper investigative and disciplining procedures in place, its police officers would not have pursued a practice of applying excessive force in arresting citizens. Id. at 972. The Third Circuit held that whether the defendants knew about and acquiesced in a custom that tolerated the tacit use of excessive force by police officers was a question for the jury. In reaching its holding, the court stated that "written complaints were sufficient for a reasonable jury to infer that the Chief of Police of Pittsburgh and his department knew, or should have known, of [the officer's] violent behavior in arresting citizens . . . ." Id. at 973. The court also rejected the argument that the existence of procedures to receive and investigate complaints operates to shield the municipality from liability. Id. at 974. Rather, the Court noted that "[p]rotection of citizen's rights and liberties depends upon the substance of the [ ] investigatory procedures" and "[w]hether those procedures had substance was for the jury's consideration." Id.

Here, Plaintiffs offer evidence that Josey had a long history of citizen complaints and department investigations concerning his conduct as a police officer. Moreover, Plaintiffs have

8

evidence that the Mayor of Philadelphia and the Police Commissioner became aware of concerns about Josey's behavior when they visited and apologized to a woman that Josey struck at the Puerto Rican Day parade.[5]  Evidence of these complaints is sufficient to defeat summary judgment, since a reasonable person could infer that the City's policymakers knew or should have known of Josey's pattern of behavior.  Having offered sufficient evidence that the City tolerated Josey's known misconduct, Plaintiffs should be permitted to present the question of "whether the City's inaction contributed to [Josey's] decision to arrest [Plaintiffs] unlawfully" to the jury.  Bielevicz, 915 F.2d at 851.

Thus, under the binding precedent of Beck and Bielevicz, Plaintiffs have adduced sufficient evidence such that a reasonable factfinder could determine that the City should be held responsible for the injury that its officers caused to Plaintiffs.

### B. Tort Claims

Defendants contends that Counts II-IX are barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S .A. § 8541 ("Tort Claims Act").  Plaintiffs do not offer any arguments to dispute the City's arguments regarding the causes of action sounding in tort.  As noted above, the Complaint only appears to seek relief from the City for Count IX, loss of consortium.

Under the Tort Claims Act, local agencies, including municipalities, and their employees are generally immune from tort liability unless the alleged misconduct fits into one eight categories, which are specifically enumerated in the statute.

The Tort Claims Act provides:

---

[5] An event that occurs after the incident at issue in a lawsuit "may have evidentiary value for a jury's consideration" as to the question of "whether the city and policymakers had a pattern of tacitly approving the use of excessive force." Beck, 89 F.3d at 972.

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa.C.S.A. § 8541.  For purposes of the Tort Claims Act, a "local agency" is defined as a "government unit other than the Commonwealth government." 42 Pa. C.S.A. § 8501.

None of the eight categories apply in this case.  42 Pa. C.S.A. § 8542 permits recovery against a local agency or its employee for injury caused by a "negligent act" that falls into one of eight categories: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic control and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. 42 Pa. C.S.A. § 8542.  Plaintiffs do not allege claims of negligence, nor do the facts that form the basis of Plaintiffs' claims fall into any of these categories.

Accordingly, Plaintiffs' tort claims against the City of Philadelphia are barred by the Tort Claims Act, and will be dismissed with prejudice.

## VI.   Conclusion

For the foregoing reasons, this Court denies the City's Motion for Summary Judgment with respect to Plaintiffs' § 1983 claim and grants the City's Motion for Summary Judgment with respect to Plaintiffs' Counts II-IX.  An appropriate order follows.

O:\Caitlin\Civil\13-2547 (Lewis)\2014.4.3 MoL on MSJ.docx